**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **TAWNI BENNETT,** | : | **Case No.: 1:21-cv-11519** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **SUNPATH, LTD., ULTIMATE AUTO** | : | |
| **PROTECTION, CELTIC MARKETING** | : | |
| **AND NATIONAL CAR CURE,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

**TAWNI BENNETT** (hereinafter referred to as "Plaintiff"), by and through her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against **SunPath, Ltd.** (hereinafter referred to as "SunPath"), **Ultimate Auto Protection** (hereinafter referred to as "UAP"), **Celtic Marketing, LLC** (hereinafter referred to as "CM"), **and National Car Cure** (hereinafter referred to as "NCC") (hereinafter collectively referred to as "Defendants"):

### INTRODUCTION

1.    Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 and §302.101 of the Texas Business and Commercial Code.

### JURISDICTION AND VENUE

2.    This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3.    Defendants conduct business in the Commonwealth of Massachusetts.

4.    Specifically, SunPath is headquartered in Massachusetts.

5.    Defendants UAP, CM and NCC each contracted with SunPath and worked to generate revenue for SunPath.

6.    Accordingly, this Court has general and specific personal jurisdiction over SunPath.

7.    Furthermore, this Court has specific personal jurisdiction over UAP, CM and NCC.

8.    As such, personal jurisdiction is established.

9.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and 1391(b)(2).

10.    Supplemental jurisdiction to all state law claims is proper pursuant to 28 U.S.C. § 1367 *et seq.*

## PARTIES

11.    Plaintiff is a natural person who resides in Denton, Texas 76205.

12.    Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

13.    Defendant SunPath is a business entity with a principal place of business and mailing address at 50 Braintree Hill Park, Suite 310, Braintree, Massachusetts 02184.

14.    Defendant UAP is a business entity with a principal place of business and mailing address at 21781 Ventura Blvd., Suite 240, Woodland Hills, California 91364.

15.    Defendant CM is a business entity with a principal place of business and mailing address of 1515 East Tropicana Ave., Suite 510, Las Vegas, Nevada 89119.

16.    Defendant NCC is a business entity with a principal place of business and mailing address of 1665 Palm Beach Lakes Blvd., #215, West Palm Beach, Florida, 33401.

17.    Defendants are "persons" as that term is defined by 47 U.S.C. § 153(39).

18.    Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

19.    At all times relevant hereto, Plaintiff maintained a cellular telephone, the number for which was 214-XXX-0990.

20.     At all times relevant hereto, Plaintiff primarily used that cell phone for residential purposes.

21.     Plaintiff registered that cell phone number, 214-XXX-0990, on the Do Not Call Registry on or around November 15, 2004.

22.     Plaintiff registered her cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

23.     Defendant SunPath is a warranty administrative provides administrative services for extended warranty plans and service contracts to consumers.

24.     To generate business through sales, SunPath relies on telemarketing services conducted by third parties.

25.     One of SunPath's strategies for telemarketing involves the use of an automatic telephone dialing systems ("ATDS") and calls that use automatically generated or pre-recorded voices to solicit business by third parties.

26.     Beginning in or around December 2019, Defendants began calling Ms. Bennett on her cellular phone XXX-XXX-0990, attempting to sell Plaintiff a SunPath automobile warranty.

27.     Plaintiff never sought information about a motor vehicle warranty and did not consent to the calls from Defendants.

28.     These calls were not made for "emergency purposes," but rather for telemarketing purposes.

29.     Despite her number's registration on the Do Not Call Registry, Defendants CM, UAP, and NCC placed calls to Ms. Bennett's phone on multiple occasions attempting to sell her a SunPath warranty.

30.     Defendants placed calls which utilized a pre-recorded voice presenting a menu of options from which Ms. Bennett was asked to select in order to speak with a representative about extended warranty plans.

31.     In order to ascertain the identities of the parties placing the unwanted solicitation calls, Plaintiff sometimes engaged with Defendants by selecting to speak with a live representative.

32.     In those instances, Plaintiff was connected to live agents who attempted to sell her automobile warranty plans administrated by SunPath.

33.     Furthermore, also for investigative purposes, because the calling parties refused to disclose their identities, on several instances Plaintiff purchased warranties in order to ascertain the identity of the party calling on SunPath's behalf.

34.     Immediately after purchasing those warranties, Plaintiff cancelled said plans and instructed Defendants to stop calling.

35.     Defendants placed calls to Plaintiff's cell phone on dates including but not limited to:

- Call 1: December 4, 2019: Defendant UAP called Ms. Bennett at the direction of SunPath and for the benefit of SunPath in connection with  the solicitation of SunPath extended warranty policies;

- Call 2: December 9, 2019 UAP placed another solicitation call on behalf of SunPath despite Plaintiff's revocation;

- Call 3: January 29, 2020, CM placed a solicitation call to Plaintiff in furtherance of soliciting a SunPath extended warranty policies;

- Call 4: January 30, 2020, CM placed a solicitation call to Plaintiff in furtherance of soliciting a SunPath warranty;

- Call 5: January 31, 2020, CM  placed a solicitation call to Plaintiff in furtherance of soliciting a SunPath warranty; and

- Call 6: February 21, 2020, NCC placed a solicitation call to Plaintiff in furtherance of soliciting a SunPath warranty.

36.     Upon information and belief, Plaintiff received additional calls to the phone number from Defendants not included in the above.

37.     During several of those calls, Ms. Bennett instructed SunPath and its agent(s) to stop their solicitation calls.

38.    Defendants did not heed to Plaintiff's clear instructions to stop the solicitation calls.

39.    Furthermore, on or around February 21, 2021 Ms. Bennett wrote to Defendants UAP and SunPath requesting a copy of their internal do-not-call list policies.

40.    Defendants UAP and SunPath declined to provide said policies.

41.    Upon information and belief Defendant SunPath authorized Defendants UAP, CM, and NCC to solicit prospective customers, and enter into contracts on SunPath's behalf with those prospective customers.

42.    UAP, CM and NCC placed unlawful calls at SunPath's direction and under SunPath's control and for the financial benefit of SunPath.

43.    SunPath acted as the principal and UAP, CM and NCC acted as SunPath's agents.

44.    SunPath is vicariously liable for the unlawful calls made by UAP, MC and NCC,

45.    Furthermore, Defendants are not registered as telephone solicitors with the Texas Secretary of State as required by the Texas Business and Commerce Code.

46.    This was confirmed by checking if Defendants were registered at: https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

47.    Plaintiff found Defendants' calls to be intrusive, distracting and annoying.

## COUNT I
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(b)

48.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

49.    The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

50.     Defendants initiated multiple telephone calls to Plaintiff's cellular telephone number using a pre-recorded voice.

51.     Defendants' calls were not made for "emergency purposes."

52.     Defendants' calls to Plaintiff's cellular telephone without any prior express consent.

53.     Defendants contacted Plaintiff despite the fact that Plaintiff's number was listed on the Do Not Call Registry.

54.     Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

55.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

56.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

### COUNT II
### DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(c)
### (Federal Do Not Call Registry)

57.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

58.     The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

59.     Defendants contacted Plaintiff despite the fact that Plaintiff's number was registered on the Do Not Call Registry since November 15, 2004.

60.     Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

61.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

62.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

**COUNT III**
**DEFENDANTS VIOLATED 47 U.S.C. § 227(c) and CFR 64.1200(d)**
**(Internal Do-Not-Call List)**
*Plaintiff v Defendants SunPath and NCC Only*

63.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

64.     Section 227(c) of the TCPA prescribes that the FCC shall enact regulations to protect residential telephone subscribers' privacy rights.

65.     Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> > **(1) *Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

66.     Plaintiff requested Defendants' UAP and SunPath's written do-not-call policies.

67.     Despite the obligation to maintain and make available do-not-call procedures and Plaintiff's explicit request for same, Defendants failed to provide Plantiff with its internal do-not-call policies.

68.     A private right of action exists for failing to maintain and/or provide internal do-not-call policies.

69.     Defendants violated Plaintiff's rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

70.     Defendants' violations were knowing and willful.

71.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

72.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.


**COUNT IV**
**DEFENDANTS VIOLATED § 302.101 OF**
**THE TEXAS BUSINESS AND COMMERCIAL CODE**

73.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

74.     §302.101 of the Texas Business & Commercial Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

75.     Defendants violated § 302.101 of the Texas Business & Commercial Code when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State.

76.     §302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to civil penalty of no more than $5,000 for each violation.

Furthermore, § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

    **Wherefore**, Plaintiff, **Tawni Bennett** respectfully prays for judgment as follows:

a.    All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

b.    Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c.    Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

d.    Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c));

e.    Statutory damages of $5,000.00 per violation (as provided under §302.302(a) of the Texas Business & Commerce Code);

f.    All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to §302.302(a) of the Texas Business & Commerce Code;

g.    Injunctive relief (as provided under 47 U.S.C. §227(b)(3)); and

h.    Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE** that Plaintiff, **TAWNI BENNETT**, demands a jury trial in this case.

Respectfully submitted,

DATED:  September 10, 2021          KIMMEL & SILVERMAN, P.C.

By: */s/ Craig T. Kimmel*
Craig T. Kimmel, Esq.
30 E. Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888
Facsimile: 877-788-2864
Email: kimmel@creditlaw.com